## LEWIS v. FARMERS' LOAN & BUILDING ASSOCIATION, Appellant.

### Division One, July 1, 1904.

1. **BUILDING AND LOAN ASSOCIATION: Competitive Bidding.** If the loan made by a building and loan association was not put up and sold by open competitive bidding, the premium exacted for the loan is to that extent usurious, if the loan otherwise provides for the payment of legal interest, and should be applied as a credit on the loan as of the date it was made.

2. ——: ——: **Sale of Equity of Redemption: Estoppel.** And where the maker of such a loan and deed of trust sells his equity of redemption in the land, and he and the purchaser estimate the amount of the loan to be the amount of the note less the amount of usurious premium thus wrongfully charged, both thinking and intending that the vendee was stepping into the shoes of the vendor, the vendee is not estopped to plead the usurious character of the premium or interest charge, simply because in buying the other's equity of redemption he assumed to pay the debt due the association.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*J. M. Davis & Sons* for appellant.

(1)   Plaintiff, when he purchased the real estate, having assumed the payment of the deed of trust in question, can not plead usury on the original loan, paid

by the mortgagors. Hiner v. Whitlow, 66 Ark. 121; Johnson v. Bldg. & Loan Ass'n, 121 Ala. 278; Eslava v. B. & L. Ass'n, 121 Ala. 480; Savings Inst. v. Copeland, 71 Iowa 67; Anderson v. Mortgage Co., 69 Pac. 130; Stephens v. Muir, 8 Ind. 352; Stine v. Bldg., Loan, F. and S. A., 18 Ind. 237; Pidgeon v. Trustees, 44 Ill. 501; Mayher v. Landfrom, 86 Ill. 513; Essley v. Stone, 116 Ill. 391; Hancock v. Fleming, 103 Ind. 533; Loan Ass'n v. Heider, 55 Ia. 424; Hollingsworth v. Swickard, 10 Iowa 385; Greither v. Alexander, 13 Iowa 275; Hough v. Horsey, 36 Md. 181; Bldg. Ass'n v. Gross, 71 Md. 456; Rubber Co. v. Wilson, 55 Mo. App. 656; Hill v. Taylor, 125 Mo. 331; Sellers v. Botsford, 11 Mich. 59; Gray v. Loud L. B. S. Co., 128 Mich. 427; Truesdell v. Dowden, 47 N. J. Eq. 396; Hartley v. Harrison, 24 N. Y. 170; McKnight v. Phelps, 37 Neb. 858; Mael v. Wink, 61 Neb. 748; Bldg. and Loan Ass'n v. Bilan, 59 Neb. 456; Cramer v. Lepper, 26 Ohio St. 59; Frost v. Pac. Sav. Co., 46 Ore. 44; Stayton v. Riddle, 114 Pa. St. 464; In re Bonnell's App., 7 Atl. 211; Ziegler v. Maner, 53 S. C. 115; Loan & Sav. Ass'n v. Sellers, 19 Tex. Civ. App. 201; Vaughn v. Building Association, 36 S. W. 1013; Sav. & Loan Ass'n v. Atterbury, 42 S. W. 569; Bldg. & Loan Ass'n v. Price, 18 Tex. Civ. App. 370; Sav. & Bldg. Ass'n v. Hay, 23 Tex. Civ. App. 98; De Wolfe v. Johnson, 10 Wheat. (U. S.) 367; Dickerson v. Bankers' L. & I. Co., 93 Va. 498; Smith v. McMillan, 46 W. Va. 577; Tyler on Usury, 407; 27 Am. and Eng. Ency. of Law (1 Ed.), 952; 2 Pomeroy's Eq. Jur., 937; Webb on Usury, sec. 374; Jones on Mortgages (4 Ed.), 644; Thompson on Building and Loan Associations (2 Ed.), sec. 261. And that this rule is applicable to loans made by building and loan associations, as well as other loans, is settled by the numerous building and loan association cases cited above. (2) If plaintiff and those through whom he claims title, grantees from Carver and Clem, purchased the land subject only to the deed of trust held by the Farmers' Loan and Building Associa-

tion, plaintiff can not dispute its validity or plead usury paid by Carver and Clem. Hancock v. Fleming, 103 Ind. 533; 1 Jones on Mortg., sec. 736; 1 Beach on Mod. Eq. Jur., sec. 466; Sav. & Loan Ass'n v. Atterbury, 42 S. W. 569; Freeman v. Auld, 44 N. Y. 50; Fuld v. Hunt, 48 Iowa 167; Johnson v. Thompson, 129 Mass. 398. The land under such circumstances stands as a primary fund for the discharge of the mortgage. Young v. Com. Co., 158 Mo. 397; Landeau v. Cottrell, 159 Mo. 308; Walker v. Godsill, 54 Mo. App. 635; Bredell v. Real Estate Co., 95 Mo. App. 686. The various deeds from Clem to Carver, and Carver to Jacobs, and from Jacobs to plaintiff did not pass to plaintiff the right to attack the mortgage on account of the alleged usury. Foster v. Wightman, 123 Mass. 100. (3) The premium having been bid at a stated meeting of the board of directors of defendant association, by open, competitive bidding, for the right of precedence in making said loan, the premium bid was not usurious. State ex rel. v. Stockton, 85 Mo. App. 477; R. S. 1889, sec. 2812. And where the borrower authorized an officer of the association to make a bid for the priority of loan, it will be presumed that the bid was made and the money obtained thereon, and that the contract was not usurious. Sav. and Loan Ass'n v. Johnson, 106 Ia. 218. (4) It was not necessary that Carver and Clem be present, but they had a right to bid by their agent, Lowenstein. State ex rel. v. Stockton, 85 Mo. App. 477. And their bid being the highest and best bid, it was sufficient, even though it were the only bid. Rupel v. S. & B. Ass'n, 158 Mo. 613.

*Wilson & Clapp* and *Campbell & Ellison* for respondent.

(1) The vendee of land subject to a deed of trust can avail himself of the defense of usury. Rubber Co. v. Wilson, 55 Mo. App. 656; Miller v. Building Associa-

tion, 83 Mo. App. 669. And this for two reasons: First, because if it was beyond the power of the vendee to assail the usurious deed of trust, the vendor would practically be disabled from selling the property except by ratification of the usury; and, second, because the amount actually due on the debt enters into and forms a part of the consideration for the sale, and the purchaser is just as much interested in securing its reduction to the amount lawfully due as was the vendor before the sale. And so here it appears from the recitals in the deeds, and the oral evidence, that the several vendors considered the original debt as $1,200, and not as $1,600. (2) There was no open competitive bidding within the meaning of the statute, and the $400 premium was usury. Brown v. Archer, 62 Mo. App. 277; Moore v. Loan Association, 74 Mo. App. 468; Price v. Loan Association, 75 Mo. App. 551; Edinger v. Building Association, 83 Mo. App. 615; Clark v. Building Association, 85 Mo. App. 389. And it was proper to credit the premium on the note. Laws 1891, p. 170; Clark v. Association, supra. (3) By "legal rate of interest" is meant the statutory rate, viz., six per cent. McDonnell v. Building Association, supra. And the note in this case bore only six per cent interest.

BRACE, P. J.—On the thirty-first day of October, 1892, Henry N. Carver and William H. Clem executed and delivered to the defendant Loan & Building Association their promissory note in words and figures as follows, to-wit:

"$1,600.    Chillicothe, Mo., 31st October, 1892.

"One day after date I promise to pay to the order of the Farmers' Loan and Building Association, of Livingston county, Missouri, sixteen hundred dollars, for value received, with interest from date at the rate of six per cent per annum payable on the last Monday of each month, and I promise to pay to said association, my monthly dues and premiums of eight dollars, each

month, as stockholder in said association, upon eight shares of stock, as per certificate No. 276, I, with all penalties assessed on my said stock, according to the Constitution and by-laws of said association.

"HENRY N. CARVER,<br>"WILLIAM H. CLEM."

And on the same day said Carver and Clem duly executed and delivered their deed of trust of the same date, whereby they conveyed the following described tract of land, situate in the county of Sullivan, and State of Missouri, to-wit:

"All of lot eleven in block thirteen of the town of Haley City, except one foot off the west side of said lot, and also eight shares of stock in said association, as per certificate No. I, 276, series 1, with all the rights, privileges and appurtenances thereunto belonging or in anywise appertaining in trust, however, for the following purposes," to John M. Voris, trustee, to secure the payment of said promissory note, and whereby the said trustee was empowered in case of default to sell said property "at public vendue for cash at the courthouse door in the city of Chillicothe, Livingston county, Missouri, first giving thirty days notice of the time, terms and place of sale and of the property to be sold by advertisement in some newspaper published in said city of Chillicothe," etc.

Afterwards by deed dated March 10, 1893, the said Clem conveyed his interest in said real estate to Joseph Carver. Afterwards by deed dated January 24, 1898, the said Henry N. Carver and Joseph Carver conveyed said real estate to John M. Jacobs. This deed contained the following clause: "This deed is subject to a mortgage held by the Chillicothe Building and Loan Association. Principal twelve hundred dollars to be paid in monthly installments of sixteen dollars per month. There have been sixty-five months paid, including January, 1898."

Afterwards by deed, dated August 29, 1898, the said

Jacobs conveyed said real estate to the plaintiff John R. Lewis. This deed contained the following clause: "This deed is made subject to a mortgage held by the Chillicothe Building & Loan Association, principal twelve hundred dollars, to be paid in monthly installments of sixteen dollars per month." Afterwards by deed dated August 6, 1901, the said John M. Voris, trustee, by deed of that date conveyed said real estate to the defendant Loan & Building Association. This deed recited default in the payment of said note and interest and monthly dues secured by said deed of trust, and was made in pursuance of a sale made thereunder at public vendue to the highest bidder *"at the courthouse door in the city of Milan, county of Sullivan, Missouri,"* on the twenty-ninth of July, 1901, thirty days notice of which had been given by advertisements published "in the Weekly Chillicothe Crisis and the Milan Republican, weekly newspapers printed and published in the cities of Chillicothe and Milan; counties of Livingston and Sullivan respectively," and at which sale the association became the purchaser for the sum of five hundred and sixty dollars. In pursuance of like notice published in "the Chillicothe Crisis" the eight shares of stock as per certificate No. I, 276, series 1," mentioned in said promissory note and deed of trust, were on the thirty-first of July, 1901, sold by the said trustee at public vendue to the highest bidder at the courthouse door in the city of Chillicothe and the defendant become the purchaser thereof at the sum of eight hundred dollars.

Afterwards to the October term, 1901, of the Sullivan county circuit court, this suit was brought by petition in the nature of a bill in equity, in which the plaintiff prays: . . . "for an accounting; that stock certificate No. 276 issued for eight shares of stock in said association be cancelled and plaintiff credited on the note of Carver and Clem with the value thereof; that the defendant be required to credit said note with all

proper credits, including the four hundred dollars un-
lawful and usurious premium charged and taken by
defendant, and made a part of said note; that the trus-
tee's sale be set aside, and the deed of trust from John
M. Voris, the trustee, to the defendant, be set aside and
for naught held; that the deed of trust be adjudged
satisfied and cancelled and the said lot eleven free from
any incumbrance by reason thereof; that plaintiff have
judgment against the defendant for the sum of sixty-five
dollars, the amount overpaid by him on said note; and
for such other and further orders, judgment and de-
crees in the premises as to the court may seem meet
and proper." And alleging therein in substance, as
grounds for such relief, that the sale of the real estate
as aforesaid was not made as required by the terms of
the power contained in the deed of trust. That said
stock was issued and said promissory note and deed of
trust were executed as a means of effecting a loan of
twelve hundred dollars to be secured thereby, upon
which the sum of fourteen hundred and seventy-two
dollars had been paid in interest and dues. That
four hundred dollars of the amount of said note was for
usurious interest charged in effecting said loan, and
that if said note had been credited with said payments
of the $1,472 and said $400 usurious interest wrong-
fully charged, said note would have been overpaid the
sum of sixty-five dollars at the time said sales were
made.

The answer admits the sale and purchase of the
real estate and stock as stated, that prior thereto there
had been paid on said stock the sum of $760 and on said
note as interest the sum of $720, and alleges that the
net proceeds of said sales, amounting to the sum of
$1,410.40, were applied as a credit on said note and
stock cancelled; that the amount due on said note on
the twenty-ninth of July, 1901, was $1,824, and that
there remained due after crediting the amount of said
sales the sum of $513.60, and denies that four hundred

dollars of the amount of said note was for usurious interest, but, in substance, alleges that such amount included in said note was a lawful premium on said loan bid therefor at the time the loan was effected.

Issue having been joined by reply, the case was taken by change of venue to the Adair county circuit court. Where, having been submitted to the court on the pleadings and evidence, the following finding and decree was rendered and entered by that court, to-wit:

"That on the twenty-fifth day of October, 1892, Henry N. Carver and William H. Clem borrowed of the defendant the sum of $1,200. That in order to obtain said money they were compelled to pay and did pay a premium of $400, and were compelled to give and did give their joint note to the defendant for the sum of $1,600. That in addition thereto they were compelled to become and did become stockholders in the defendant association, and then and there became the joint owners of eight shares of stock in said association of the value of $1,600, when matured, for the sole and express purpose of obtaining said loan of $1,200 and as incident thereto. And that to secure the payment of said note they were compelled to give and did give a deed of trust on the real estate described in the amended petition, to-wit, lot 11, in block 13 of the town of Haley City, Sullivan county, Missouri (except one foot off the west side thereof), as well also to pledge their said eight shares of stock.

"The court further finds that the said loan was not made, nor the money of the association put up and sold by open competitive bidding, but that the $400 premium exacted and received for the $1,200 loan, was unlawful and usurious, and that the said $400 should be applied as a credit on said note as of its date, viz., October 31, 1892.

"The court further finds that afterwards, to-wit, March 10, 1893, the said Clem sold for a valuable consideration, subject to the deed of trust, his interest in

the said real estate and stock to Joseph Carver; that afterwards, to-wit, January 24, 1898, the said Henry N. and Joseph Carver sold for a valuable consideration, subject to the deed of trust, the said real estate and stock to John M. Jacobs; and that afterwards, to-wit, August 24, 1898, the said Jacobs for a valuable consideration, sold, subject to the deed of trust, the said real estate and stock to plaintiff, and that plaintiff has ever since been the owner of said real estate and stock.

"The court further finds that on the twenty-ninth day of July, 1901, the date of the sale of the said real estate by the trustee under the said deed of trust, and long prior thereto, the said note and loan had been fully paid off and discharged.

"The court further finds that under the provisions of said deed of trust the trustee was not authorized to sell the said real estate upon default, at the courthouse door or at any other place in said Sullivan county, and that the sale made by the trustee of said real estate, was had and made without authority of law whatever.

"The court further finds that the defendant exacted and received usurious interest for the said indebtedness; and that the lien on the said eight shares of stock included in the said deed of trust was invalid and illegal, and the sale of said stock by the said association was illegal and void.

"It is, therefore, ordered, adjudged and decreed by the court, that the sale to the defendant of lot 11 in block 13 of the original town of Haley City, Missouri (except one foot off the west side thereof), by John M. Voris, trustee named in the deed of trust, on the thirty-first day of July, 1901, be and the same is hereby set aside and for naught held; that the trustee's deed of date July 29, 1901, made by the said Voris, trustee as aforesaid, to the defendant, conveying the said real estate, be and the same is set aside and for naught held in law or equity, and the plaintiff restored to all his rights in said land the same as if said deed of trust had never been

made; that the said eight shares of stock be cancelled; that the note of $1,600, of date October 31, 1892, given by Henry N. Carver and William H. Clem to the defendant be brought into court and the same cancelled and marked fully paid; that the deed of trust given by the said Carver and Clem to the defendant to secure the said note of even date therewith, be cancelled and satisfied, and the said real estate freed from any incumbrance by reason thereof; and that the plaintiff recover of and from the defendant his costs in this case laid out and expended, taxed at the sum of —— ——, and that execution issue therefor.''

From which the defendant appeals.

(1)    This loan was made under the statute of 1889, section 2812 of which provides that: ''The directors of the corporation shall hold stated meetings, at which such sums of money as they may determine shall be offered for loan to all the members in open meeting. The shareholder who shall bid the highest for the preference, or priority of loan, shall be entitled to receive a loan whose amount shall not exceed the number of shares of stock held by such shareholder, multiplied by the par value thereof. . . . '' And section 2814 of which provides that, ''No premiums, fines or interest on such premiums that may accrue to the said corporation according to the provisions of this article shall be deemed usurious and the same may be collected as debts of like amounts are now by law collected.''

The court found as a matter of fact that four hundred dollars of the consideration of said note was for a premium exacted for the loan of $1,200, which loan was not put up and sold by open competitive bidding, as contemplated in said statute, and hence that said note was to that extent usurious and the finding of the court is well sustained by the evidence. Hence, under section 3709, Revised Statutes 1899, the court correctly ruled that said $400 should be applied as a credit on said note as of its date October 31, 1892, unless as is claimed by

counsel for defendant the plaintiff when he purchased the real estate assumed the payment of the note secured by the deed of trust, or as stated by counsel, "assumed the payment of the deed of trust." There is no substantial evidence tending to prove an express agreement by the plaintiff or his grantor to pay said promissory note or deed of trust. The assumption mentioned in the pleadings and talked of by the witness is a deduction from the fact that plaintiff purchased the property subject to a deed of trust, the true relation of plaintiff to which is expressed in the clause of his deed hereinbefore set out, thus, "This deed is made subject to a mortgage held by the Chillicothe Building & Loan Association, principal twelve hundred dollars, to be paid in monthly installments of sixteen dollars per month." His so-called assumption had this extent and no more, and was of course no express assumption at all, and having this extent and no more, is he precluded from setting up usury as to the four hundred dollars included in the note; but not included in this so-called assumption, and if so, upon what principle? Counsel for defendant contends that he is so estopped, under the general rule, "that a purchaser of an equity of redemption in premises covered by a mortgage can not set up the defense of usury," in support of which many authorities are cited. General rules are necessarily broadly stated, and when it becomes necesary to apply them to the facts of a given case, it also becomes necessary to inquire as to the reason of the rule in order to determine whether the particular facts bring the case within the reason of the rule, for if not within the reason, the case is not within the rule. The reason for this rule has never been better stated, so far as our observation extends, than by VAN FLEET, V. C., in Trusdell v. Dowden, 47 N. J. Eq. l. c. 399, where he says: "This doctrine does not at all rest on the theory that the taint, by the conveyance, has, as between the original parties, been purged from the mortgage; on the contrary, the fact is,

the taint as to them still exists in all of its original force —but the doctrine rests on this foundation: that the purchaser by taking title subject to the mortgage *and retaining out of the price he agreed to pay sufficient money to pay the mortgage*, places himself in a positon where he can not allege usury without attempting to keep back part of the money which he agreed to pay for the mortgaged lands." The italics are ours, and in the sentence thus italicised is contained the basic fact upon which this doctrine of estoppel rests. That fact is wanting in this case as to four hundred dollars of the amount of said note and deed of trust, in that, plaintiff and his grantor only retained out of the price they agreed to pay for the real estate, twelve hundred dollars, at which amount the loan and incumbrance was figured into their respective deals and deeds, as is plainly indicated in the clauses therein set out and is confirmed by the parol testimony. These parties knew nothing about building association loans, and this loan and the incumbrance securing it dwelt in their minds as a loan and incumbrance of twelve hundred dollars, and they so estimated it in their transfers, each thinking and intending that the grantee should in respect of it merely step into the shoes of his grantor, have the same rights and incur the same liabilities—nothing more and nothing less. Such being the case, no good reason appears why the plaintiff, the mortgagors' privy in estate, should not stand in their shoes and have the same rights in respect of the usury in this loan, in view of the fact that our statute in no way restricts the remedy therefor to the original parties to the transaction, and we think the trial court in so holding, and crediting the note with said $400 as of the date of the note, committed no error. Having done so, how did the account stand? The defendant under the statute was entitled to the sum of twelve hundred dollars with legal interest thereon from the date of the note until the date of the sales; i. e., to $1,200, with six per cent interest from October 31, 1892,

to July 31, 1901, less the amount of monthly payments received by the defendant for interest and dues, amounting in the aggregate to the sum of $1,472, with interest thereon at the same rate on each monthly payment from the date thereof to the day of the sale. If the account be stated on this basis, it will be found that the note was overpaid in the sum of eighty-five dollars on the day of the sale. As the land was not sold in pursuance of the power contained in the deed of trust, and as this was the true state of the account after the transaction was purged of its usury, no good reason appears why the decree should not be affirmed as it stands, and it is accordingly so ordered.

All concur.